UNITED STATES of America

v.

TEXAS STATE BOARD OF PUBLIC ACCOUNTANCY.

Civ. No. A–76–CA–219.

United States District Court,
W. D. Texas,
Austin Division.

May 5, 1978.

Hays Gorey, Jr., Jeffrey L. Dorman, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

David M. Kendall, Jr., First Asst. Atty. Gen., Austin, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

This is a suit by the United States seeking to enjoin the alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, by Defendant. Both parties have moved for summary judgment after filing voluminous affidavits and stipulations.

The Defendant, the Texas State Board of Public Accountancy (hereinafter referred to as "the Board"), is organized and exists under the provisions of the Texas Public Accountancy Act of 1945, as amended, Tex. Rev.Civ.Stat.Ann. Article 41a (the Accountancy Act). The Board consists of nine licensed accountants who practice in Texas. Members are appointed by the Governor and approved by the Senate; they must be practicing public accountants or certified public accountants holding permits to practice in Texas. Board members continue to

practice their profession while serving on the Board. Members serve without compensation, but for the reimbursement of necessary expenses. Section 5 of the Accountancy Act provides that the Board "may promulgate, and may amend from time to time, rules of professional conduct appropriate to establish and maintain a high standard of integrity in the profession of public accountancy . . . .". Such rules become effective only upon approval by a majority of permit holders voting in a referendum. Rule 14 of these Rules, at issue in this case, provides as follows:

A public accountant shall not make a competitive bid for professional services.

A competitive bid is defined as a proposal by a public accountant to a prospective client to perform professional services when such proposal quotes the compensation to be received for such services and it is given with the knowledge that similar proposals are being solicited concurrently from one or more other public accountants. The fact that a public accountant is solicited to make a proposal by a person or organization not already his client is indicative that similar proposals are being solicited from other public accountants and it shall be incumbent upon the public accountant to assure himself to the contrary by direct inquiry.

Any proposal made under the foregoing circumstances is a competitive bid whether the proposed compensation is stated as a lump sum, a maximum amount, or any form of unit price, including per diem or per hour rates with or without a maximum sum.

For the most part, Rule 14 has been effective, and the initiation of formal enforcement proceedings has been necessary in only a few instances. According to the stipulations, Rule 14 prevents accountants from submitting competitive bids, quoting prices, or giving any type of fee estimate to a potential client prior to the engagement of the accountant when the accountant has reason to believe the proposals are being solicited concurrently from other public accountants. But for the rule, a number of accountants would engage in competitive bidding in Texas.

*Price Fixing as a per se violation of the Sherman Act:*

■ Plaintiff argues that the restraint against competitive bidding envisioned by Rule 14 is a type of price fixing which is a per se violation of Section 1 of the Sherman Act. One need only read Rule 14 to see that it is the type of manipulation of the price-setting function of competitive markets which is condemned in a blanket manner by the Sherman Act. Rule 14 extinguishes directly price competition that would otherwise exist among Texas accountants through competitive bidding.

This conclusion is strengthened by the recent holding of the United States Supreme Court in *National Society of Professional Engineers v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978), affirming the earlier opinion rendered by the District of Columbia Circuit, 181 U.S. App.D.C. 41, 555 F.2d 978 (1977). This case concerned an agreement among competitors to refuse to discuss prices with potential customers until after the initial selection of an engineer. The Court stated:

"While this is not price fixing as such, no elaborate industry analysis is required to demonstrate the anticompetitive character of such an agreement. It operates as an absolute ban on competitive bidding, applying with equal force to both complicated and simple projects and to both inexperienced and sophisticated customers. As the District Court found, the ban 'impedes the ordinary give and take of the market place', and substantially deprives the customer of 'the ability to utilize and compare prices in selecting engineering services.' D.C., 404 F.Supp. 457, 460. On its face, this agreement restrains trade within the meaning of § 1 of the Sherman Act." 435 U.S. 692, 98 S.Ct. 1365.

The Professional Engineers' bidding restriction provided that no fee information could be given to a prospective client "in the form of cost estimates or other proposals in terms of dollars, man-days of work

required, or percentage of construction cost . . . ". Rule 14 in the instant case proscribes the furnishing of a fee estimate whether stated as a lump sum, a maximum amount, or any form of unit price, including per diem or per hour rates with or without maximum sum. Rule 14, which on its face bans all price information, is at least as restrictive as that found to be improper in the *Professional Engineers* case. Since Rule 14 is clearly a per se violation of the Sherman Act, no inquiry into its precise effect or justification is required or permitted. *United States v. Socony-Vacuum Oil Co., Inc.,* 310 U.S. 150, 220–22, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

*Jurisdictional Requirement of Section 1 of the Sherman Act:*

Defendant has in effect admitted that the conduct challenged in the complaint is within the flow of interstate commerce and has a substantial effect on such commerce, but it has not admitted to engaging in a combination or conspiracy with Texas accountants when it promulgated and enforced Rule 14. Nonetheless, the Court agrees with Plaintiff that facts which are not in dispute compel a finding that Defendant in fact engaged in such a combination or conspiracy.

 A conspiracy within the meaning of the Sherman Act arises from any agreement, express or implied, to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means. *Duplex Printing Co. v. Deering,* 254 U.S. 443, 465, 41 S.Ct. 172, 65 L.Ed. 349 (1921). The essence of conspiracy is a voluntary assent to a common scheme or plan.

 On the other hand, the Sherman Act also proscribes concerted action that does not rise to the level of a common law conspiracy. Thus it is established that voluntary assent is not required to establish a Sherman Act "combination." In *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 142, 88 S.Ct. 1981, 1986, 20 L.Ed.2d 982 (1968), the Supreme Court held that a franchisee formed an unlawful combination with the franchisor "the day he unwillingly complied with the restrictive franchise agreements." *See also, Albrecht v. Herald Co.,* 390 U.S. 145, 150 n.6, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307 (5th Cir. 1976) (finding that the requisite combination existed on the basis of firm and resolute enforcement of restrictions and the inferable acquiescence of those coerced).

Here Plaintiff asserts the concerted action is established in two ways: (1) Rule 14 was established through the joint action of Defendant which promulgated the rule and a majority of permit holders who admittedly approved its terms and (2) Texas permit holders generally have acquiesced in the ban on competitive bidding under the threat of disciplinary action by the Defendant which actively enforces the rule.

 The first described conduct constitutes a conspiracy to fix prices since neither the Board nor the permit holders could put the rule into effect acting alone; each acted knowing the assent of the other was required. *See Interstate Circuit, Inc. v. United States,* 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939). In addition, as in the case of the unwilling franchisee in *Perma Life,* the permit holders' acquiescence, whether voluntary or involuntary, in the ban establishes a Sherman Act combination and provides an alternative basis for an injunction against the restriction on bidding. The Court agrees with Plaintiff that a combination has been shown by the undisputed and/or stipulated facts on record.

Suffice it to say that the Court does not find persuasive the cases and reasoning advanced by Defendant to show there has been no combination or conspiracy.

*Defendant's asserted "immunity" from federal anti-trust laws:*

 Defendant relies upon the case of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), as authority for its assertion that it is immune from the provisions of the Sherman Act. Following the recent ruling of the Supreme Court in *City*

*of LaFayette v. La. Power and Light Co.,* this Court concludes that "the *Parker* doctrine exempts only anticompetitive conduct engaged in as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service." 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978). In the instant case Rule 14 is not mandated by any state regulation or action. Section 5 of the Accountancy Act is cast in permissive, not mandatory, language and, furthermore, only allows adoption of Rules appropriate for maintenance of high standards of integrity in the Accountancy profession. Nowhere in the Act does the State as sovereign mandate the anticompetitive conduct required by Rule 14, nor is such policy dictated by the State. Additionally, it cannot be said that Section 5 of the Act in any way concerns or contemplates "the kind of action complained of" here. 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (1978).

Accordingly, the Court finds that the State has not directed or authorized the anticompetitive practice at issue and that the Defendant is not exempt from federal antitrust laws. It is, therefore,

ORDERED, ADJUDGED, and DE-CREED that Plaintiff's Motion for Summary Judgment is hereby GRANTED and that Defendant's Motion for Summary Judgment is hereby DENIED and, accordingly:

1. That Defendant be enjoined from continuing, maintaining, or renewing the above-stated conspiracy and combination and from engaging in any other combination, conspiracy, contract, agreement, understanding or concert of action having similar purposes or effects, and from adopting, ratifying, or following any plan or practice having similar purposes or effects;

2. That Defendant be enjoined from promulgating, publishing, distributing or otherwise suggesting any rule prohibiting competitive bidding by Defendant's permit holders;

3. That Defendant be required to cancel those provisions of its rules of professional conduct which have as their purpose or ef-fect the suppression or elimination of price competition among Defendant's permit holders;

4. That Plaintiff recover the costs of this suit.