UNITED STATES of America,
Plaintiff-Appellee,

v.

TEXAS STATE BOARD OF PUBLIC
ACCOUNTANCY,
Defendant-Appellant.

No. 78–2205.

United States Court of Appeals,
Fifth Circuit.

April 9, 1979.

Rehearing and Rehearing En Banc
Denied May 7, 1979.

David M. Kendall, Jr., Asst. Atty. Gen., John L. Hill, Atty. Gen., Austin, Tex., for defendant-appellant.

Hays Gorey, Jr., Antitrust Div., William D. Coston, John J. Powers, III, John H. Shenefield, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JONES, CLARK and GEE, Circuit Judges.

PER CURIAM:

The judgment appealed from is modified by deleting the paragraph numbered 3 providing:

That Defendant be required to cancel those provisions of its rules of professional conduct which have as their purpose or effect the suppression or elimination of price competition among Defendant's permit holders;

and as modified is affirmed on the basis of the opinions of the district court dated February 18, 1977, and May 5, 1978. 464 F.Supp. 400.

GEE, Circuit Judge, dissenting:

If it is true that the rule here invalidated is that of a "State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation," then it is immune from antitrust attack. But the proper standard is somewhat more subtle than that ultimately applied by the district court below. Its opinion, adopted by my brothers, states:

Defendant relies upon the case of *Parker v. Brown,* 317 U.S. 338 [341, 63 S.Ct. 307, 87 L.Ed. 315] (1943), as authority for its assertion that it is immune from the provisions of the Sherman Act. Following the recent ruling of the Supreme Court in *City of LaFayette v. La. Power and Light Co.,* this Court concludes that "the *Parker* doctrine exempts only anticompetitive conduct engaged in as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service." 46 U.S.L.W. 4265, 4271 [435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364] (U.S. Mar. 28, 1978). In the instant case Rule 14 is not mandated by any state regulation or action. Section 5 of the Accountancy Act is cast in permissive, not mandatory, language and, furthermore, only allows adoption of rules appropriate for maintenance of high standards of integrity in the Accountancy profession. Nowhere in the Act does the State as sovereign mandate the anticompetitive conduct required by Rule 14, nor is such policy dictated by the State. Additionally, it cannot be said that Section 5 of the Act in any way concerns or contemplates "the kind of action complained of" here. 46 U.S.L.W. 4265, 4272 [435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364] (U.S. Mar. 28, 1978).

Accordingly, the Court finds that the State has not directed or authorized the anticompetitive practice at issue and that the Defendant is not exempt from federal antitrust laws.

This reasoning seems to me to miss the point of *City of Lafayette* in concluding that because the Texas State Board's authority is cast in permissive rather than mandatory language, the Board's action in establishing Rule 14 is not immune. As an agency of the State of Texas, established by the Public Accountancy Act of 1945, Tex. Rev.Civ.Stat.Ann. art. 41a (1969), the Board exercises the sovereign powers of the state,

or it has no powers at all. Thus, it does not signify, in determining whether the sovereign has acted, that section 5 of the Accountancy Act—which delegates the Board rule-making power—permitted but did not mandate Rule 14. Nor is the permissive-mandatory distinction helpful in analyzing whether the Board's disputed action is performed pursuant to a state policy to replace competition with regulation.

The real inquiry required by *City of Lafayette, La. v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), is whether the state legislature *contemplated* the challenged anticompetitive restraints in delegating to the State Board its generous powers "to establish and maintain a high standard of integrity in the profession of public accountancy." Tex. Rev.Civ.Stat.Ann. art. 41a, § 5. The Supreme Court explicitly stated that a political subdivision need not be able to point to a "specific, detailed legislative authorization" before it properly may assert a defense of immunity. 98 S.Ct. at 1138. An adequate state mandate exists when it is found " 'from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of.' " *Id., quoting* 5th Cir. opinion below. On the other hand, it is possible that careful inquiry into the factual record might show that the connection between this granted power and the Board's use of it is too tenuous to permit the conclusion that the legislature intended its scope of activity to encompass an anti-competitive regulation. If so, Rule 14 and the profession's conduct in response to it are not immune to antitrust regulation.

Reviewing the judgment below in light of these standards and giving the Board the benefit of all favorable inferences to be drawn from the evidence, as is proper on review of a summary judgment, I can only conclude that either the legislature must have contemplated that some anticompetitive regulation would be enacted in the name of professional integrity or, at the least, that there remains a material issue of fact about whether or not it did.

There is evidence in the record that at least as early as 1931 competitive bidding was considered a serious problem confronting the accounting profession. General opinion in the profession at the time the Board received its mandate to ensure professional integrity viewed competitive bidding for accounting engagements as contrary to the best interests of accountants, clients, and the public generally. It was thought that bidding would ultimately result in the customer's not receiving the desired type and quality of services when unexpected problems developed in the course of an engagement. Moreover, the Texas Legislature has had ample opportunity in the course of considering the several amendments it has made in the statute, including section 5, to rein in the Board if it was thought to have exceeded its contemplated scope. This is, after all, a Texas law. In similar situations, Texas courts draw the inference that the legislature either approves the action or that the general dissatisfaction therewith is of insufficient strength to impel legislative action. *Moss v. Gibbs,* 370 S.W.2d 452 (Tex.1963). Finally, among the stipulations below is one that the state legislature has expressed a policy that there shall not be competitive bidding in awarding public contracts for the services of certified public accountants. Instead, such contracts are to be awarded on the basis of demonstrated competence and qualifications. Professional Services Procurement Act, Tex.Rev.Civ.Stat.Ann. art. 664–4 (1978).

On the state of this record, I think the court below erred in "finding" that the state has not authorized the challenged anticompetitive practice—certainly in concluding that beyond peradventure it has not done so. I would reverse for further proceedings addressing the issue posed by the Supreme Court in *City of Lafayette,* an issue which so far as I can tell has never been addressed.