FEDERAL TRADE COMMISSION,
Petitioner, Appellee,

v.

Charles F. MONAHAN, et al.,
Respondents, Appellants.

No. 87–1392.

United States Court of Appeals,
First Circuit.

Argued Sept. 16, 1987.

Decided Nov. 4, 1987.

William L. Pardee, Asst. Atty. Gen., with whom Steven H. Goldberg, Asst. Atty. Gen., and James M. Shannon, Atty. Gen., were on brief for respondents, appellants.

Frederick E. Dooley, Jr., with whom Robert D. Paul, Gen. Counsel, James E. McCarty, Deputy Gen. Counsel, and Jerold D. Cummins, Deputy Asst. Gen. Counsel, were on brief for petitioner, appellee.

Before BREYER and SELYA, Circuit Judges, and LAGUEUX,* District Judge.

BREYER, Circuit Judge.

In August 1985, the Federal Trade Commission ("FTC") told the Massachusetts Board of Registration in Pharmacy ("the Board") that it would investigate three Board rules to see whether these rules unreasonably restrained competition and hurt consumers. The first rule essentially prohibited advertising in which one pharmacist claimed superiority to (or disparaged) another; the second rule prohibited mail order pharmacies; and the third rule prevented pharmacies from establishing "branch offices" or "pick-up stations", say, at work places, where patients could drop off, and pick up, prescriptions that the "main office" (in the interim) would fill in batches. *See* Mass.Regs.Code tit. 247, §§ 7.00(7), (14), (26) (1979), *subsequently amended*, Feb. 6, 1987. (See Appendix.)

The FTC asked the Board to cooperate with the investigation. The Board refused to do so. The FTC then issued subpoenas, which the Board resisted, and which the

* Of the District of Rhode Island, sitting by designation.

FTC eventually asked the district court to enforce. *See* 15 U.S.C. § 49 (1982). The district court ordered the subpoenas enforced, and the Board now appeals that enforcement order. We believe the order is legally proper.

The Board concedes that the FTC has broad legal power to issue investigative subpoenas. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950) (subpoenas should be enforced if the inquiry is "within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant"); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946) ("Congress has authorized the Administrator, rather than the district courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations"); *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943) (subpoenas enforceable unless "plainly incompetent or irrelevant to any lawful purpose"). But the Board says that the FTC has no "lawful purpose" in investigating its potential antitrust violations because, as a state regulatory agency, it is "immune" from the antitrust laws. *See Hallie v. Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985); *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984); *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The Board seems to take the view that this immunity protects its original regulations from investigation no matter how harmful to competition or to consumers they may turn out to be. This, however, is not so.

■■ For one thing, a subordinate state governmental unit enjoys antitrust "immunity" only when it acts pursuant to a "clearly articulated and affirmatively expressed" state policy. *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); *Interface Group, Inc. v. Massachusetts Port Authority*, 816 F.2d 9, 13 (1st Cir.1987) (hereinafter *"Massport"*). The Board is a subordinate governmental unit. *See Hoover*, 466 U.S. at 568, 104 S.Ct. at 1995 (indicating that for immunity purposes, a state agency is equivalent to a municipality, not the legislature itself); *Massport*, 816 F.2d at 13. But we can find no "clearly articulated and affirmatively expressed" state policy that guarantees the Board its protection. Of course, the state has authorized the Board to regulate pharmacy advertising, branching, and other such practices. *See* Mass.Gen.Laws ch. 13, §§ 22–25 (1984); Mass.Gen.Laws ch. 94C, §§ 1–31 (1984); Mass.Gen.Laws ch. 112, §§ 24–42A, 61–65 (1984). But we do not know for sure that this is all that the Board is doing. The state statutes do not permit the Board, under the guise of regulation, and without legitimate purpose, simply to raise consumer prices or to inconvenience workers by making them travel farther for prescriptions. *Cf. United States v. Texas State Board of Public Accountancy*, 464 F.Supp. 400 (W.D.Tex.1978), *aff'd with minor modifications per curiam*, 592 F.2d 919 (5th Cir.), *cert. denied*, 444 U.S. 925, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979). *But cf. First American Title Co. v. South Dakota Land Title Association*, 714 F.2d 1439 (8th Cir. 1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). Did the Board do so here? Has it engaged in other unreasonable activities? Were its activities justified by legitimate regulatory purposes? Even if they were not, were those activities so closely related to legitimate agency activities as to warrant immunity? We cannot answer these questions until we know more precisely what those activities are. We, like the FTC, must wait to see the results of the investigation before we know whether, or the extent to which, the activity falls within the scope of a "clearly articulated and affirmatively expressed" state policy.

■ For another thing, where "state regulation by a private party is involved," and where there is a "gauzy cloak of state involvement over what is essentially a private" anticompetitive activity, *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 106, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980), the state, in order to obtain antitrust immunity,

"must supervise actively" the activity in question. *Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 57, 105 S.Ct. 1721, 1727, 85 L.Ed.2d 36 (1985). Whether any "anticompetitive" Board activities are "essentially" those of private parties depends upon how the Board functions in practice, and perhaps upon the role played by its members who are private pharmacists. *See* Mass.Gen. Laws ch. 13, § 22 (1984). Again, we cannot now say, without knowing more facts, whether or not this additional "state supervision" condition will apply.

The Board points out that in *Massport*, 816 F.2d at 10–13, we looked only at an antitrust complaint and found that Massport, a state agency, was "immune" from the plaintiff's antitrust attack. We wrote there that the complaint's factual statements, which the plaintiff said revealed "exclusive dealing," also revealed activities that directly implemented "policies that govern which airlines are to use which terminals, where and how they are to be serviced, and whether or when they can taxi from one terminal to another," all activities which lie "close to the heart of Massport's basic purpose." *Massport*, 816 F.2d at 13.

*Massport*, however, is clearly distinguishable. Because *Massport* was not a subpoena enforcement case, we could look at the complaint and directly compare the claimed activities with Massport's authorizing legislation. Moreover, in *Massport* we could not conceive how the activities attacked could fall outside the area of immunity delineated by clear state policy; in this case, as our previous discussion suggests, that is not so. Rather, here we do not now know whether the Board's activities will turn out to lie "close to," or far from, the state statutes' basic purpose; nor do we know whether they will turn out to fall inside or "outside that area of [agency] autonomy involving ' "ordinary" [agency] errors or abuses in the administration of powers conferred by the state.' " *Massport*, 816 F.2d at 13–14, quoting *Llewellyn v. Crothers*, 765 F.2d 769, 774 (9th Cir. 1985) (quoting Areeda, "Antitrust Immunity for 'State Action' after *Lafayette* " 95 Harv.L.Rev. 435, 453 (1981)). All depends on precisely what conduct turns out to be at issue, its harms, its justifications, and its relation to the agency's basic statutory mission.

This factual uncertainty is precisely why this "sort of dispute" ought not to be

> settled in a subpoena enforcement proceeding. An agency's investigations should not be bogged down by premature challenges to its regulatory jurisdiction. These subpoenas do not fit within the narrow exception proscribing agency investigations that wander unconscionably far afield; the Commission's regulatory jurisdictions over appellants may be clouded but it is not plainly spurious.

*Federal Trade Commission v. Swanson*, 560 F.2d 1, 2 (1st Cir.1977) (citations omitted).

The judgment of the district court is

*Affirmed.*

### APPENDIX

The original and amended versions of the three regulations at issue are as follows:

*Original Versions*

247 CMR 7.00(7)—"A pharmacist or pharmacy shall not, by advertising or otherwise, claim any professional superiority in the dispensing of devices or drugs; nor shall a pharmacist or pharmacy advertise services or products in a manner that disparages the ability, character or integrity of other pharmacists."

247 CMR 7.00(14)—"A pharmacist or pharmacy shall not participate in any mail order business, or in any plan, agreement or arrangement that adversely affects the pharmacist-patient-practitioner relationship."

247 CMR 7.00(26)—"(a) A pharmacy, or anyone acting in behalf of said pharmacy, shall not enter into any scheme, arrangement or agreement for collecting, by itself or other persons, prescriptions at industrial plants, places or [sic] business, or any other sites where specific groups of people are regularly employed or affiliated. (b) A

pharmacy, or anyone acting in behalf of said pharmacy, shall not fill any prescriptions which have been collected through solicitation, by itself or others, at industrial plants, places of business, or any other sites where specific groups of people are regularly employed or affiliated, and which prescriptions have been, directly or indirectly, batch-delivered to said pharmacy. (c) The provisions set forth in 247 CMR 7.00(26)(a) and 7.00(26)(b) shall not apply to prescriptions which have been issued to patients who are being treated within a licensed extended care facility or within a licensed hospital facility, whenever such prescriptions have been collected by the pharmacy itself or delivered to said pharmacy by an authorized agent of said patients."

Mass.Regs.Code ch. 247 §§ 7.00(7), 7.00(14), 7.00(26) (1979).

*New Versions*

247 CMR 7.00(7)—"A pharmacist shall not utilize advertising which makes claims of professional superiority that he or she cannot substantiate."

247 CMR 7.00(14)—"No pharmacist or pharmacy shall engage in the sale of controlled substances through the mail or by common carrier. Notwithstanding the foregoing, a pharmacist or pharmacy may dispense prescription drugs by mail or common carrier, in a manner consistent with federal law and U.S. postal regulations, to any customer on a temporary basis in the event such customer is unable to present himself or herself at the dispensing pharmacy due to illness, injury or absence, provided that the dispensing pharmacist or pharmacy shall in each such case have available sufficient information to contact such customer and the prescribing physician."

247 CMR 7.00(26)—"(a) No pharmacy, or anyone acting in behalf of a pharmacy, shall collect prescriptions at industrial plants, places of business, or any other site where specific groups of people are regularly employed or affiliated unless the prescriptions are collected in person by a pharmacist or other pharmacy employee and then are distributed to the patient or an authorized agent of the patient by a pharmacist. (b) The provisions set forth in 247 CMR 7.00(26)(a) shall not apply to prescriptions which have been issued to patients who are being treated within a licensed extended care facility or within a licensed hospital facility, whenever such prescriptions have been collected by the pharmacy itself or delivered to said pharmacy by an authorized agent of said patients."

Mass.Regs.Code ch. 247 §§ 7.00(7), 7.00(14), 7.00(26) (1987).