**UNITED STATES of America,**
**Plaintiff,**

v.

**NATIONAL SOCIETY OF PROFESSIONAL ENGINEERS,**
**Defendant.**

**Civ. A. No. 2412–72.**

United States District Court,
District of Columbia.

Nov. 26, 1975.

Richard J. Favretto, Dept. of Justice, for plaintiff.

Lee Loevinger, E. Barrett Prettyman, Jr., Hogan & Hartson, Washington, D. C., Milton F. Lunch, Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOHN LEWIS SMITH, Jr., District Judge.

■ This case is before the Court on remand from the Supreme Court "for further consideration in light of *Goldfarb v. Virginia State Bar*, 421 U.S. 773 [95 S.Ct. 2004, 44 L.Ed.2d 572] (1975)." 422 U.S. 1031, 95 S.Ct. 2646, 45 L.Ed.2d 686 (1975).[1] The issue confronting the Court has been well stated by the parties in their briefs: Was the Supreme Court's action, as defendant asserts, in effect a reversal of this Court's decision and a directive to analyze defendant's ban on competitive bidding under the rule of reason rather than under the *per se* doctrine? Or, as plaintiff claims, did the Supreme Court directly uphold this Court in *Goldfarb* and routinely remand for consideration of this intervening precedent—as well as to allow for appellate review under a new antitrust statute, 15 U.S.C.A. § 29(a) (1975)?

Having carefully examined the *Goldfarb* case and the memoranda and arguments presented by the parties, this Court finds *Goldfarb* supportive of its analysis and accordingly reaffirms its previous decision. *See United States v. National Society of Professional Engineers*, 389 F.Supp. 1193 (D.D.C.1974).[2]

■ The *Goldfarb* case held that a minimum fee schedule for lawyers published by a county bar association and enforced by a state bar association violated § 1 of the Sherman Act, 15 U.S.C. § 1. The Court's opinion focused on four areas: whether respondents had engaged in price fixing, whether the activities affected interstate commerce, whether there was an antitrust exemption for activities involving a "learned profession," and whether the "state action" exemption (*see Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943)) was available to respondents. *Goldfarb, supra*, 421 U.S. at 780, 95 S. Ct. 2004. Defendant here has abandoned its arguments concerning the "learned profession" exemption and the "state action" exemption. This leaves for consideration the matters of interstate commerce, defendant's alleged price fixing activities, and the applicable antitrust standard.

There can be no question that NSPE's activities both are in interstate commerce and have a substantial effect on interstate commerce. It suffices to cite briefly this Court's finding in its previous decision:

"[Professional engineering] is an industry often organized on a local, re-

1. The Supreme Court had previously denied National Society of Professional Engineers' (NSPE) motion for expedited consideration together with the *Goldfarb* case. 420 U.S. 905, 95 S.Ct. 823, 42 L.Ed.2d 834 (1975).

2. Several procedural matters deserve comment initially. The Court finds no merit in defendant's contention that by awarding costs of $100 to NSPE, the Supreme Court held NSPE to be the *substantive* "prevailing party" within the meaning of 28 U.S.C. § 2412. Rule 57(2) of the Rules of the Supreme Court allows costs to the appellant as a matter of course in cases of "reversal *or*

*vacating* of any judgment. . . ." *See also* Rule 57(5) (award of costs for or against the United States). Moreover, in vacating and remanding, the Supreme Court had before it only the NSPE Jurisdictional Statement and the Government's Motion to Affirm; the case had been neither briefed nor argued. The Court's action was thus not a final determination on the merits, nor was there specific indication of error on the part of the trial court. *See Henry v. City of Rock Hill*, 376 U.S. 776, 777, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964); Stern & Gressman, *Supreme Court Practice* § 5.12 & nn. 28, 33, 39 (4th ed. 1969).

gional, national and even international scale controlling, guiding and shaping the pace and direction of the vast array of interstate transactions needed to carry out much of the nation's construction and manufacture. Fully 50 to 80 percent of the cost of constructing and equipping construction projects is controlled by an engineer's work. A substantial amount of equipment and material is transported in interstate commerce at the specific direction of NSPE members. It would not be hyperbole to observe that professional engineering services are at the very backbone of the major portion of the nation's commerce." *United States v. National Society of Professional Engineers*, 389 F.Supp. 1193, 1199 (1974); *see also id.* at 1203, Findings of Fact Proposed by Plaintiff and Adopted by the Court (FFP) 8–15.

In determining that the fee schedule in *Goldfarb* constituted a price fixing practice, the Court emphasized the nature of the restraint, the enforcement mechanism, and the fee schedule's adverse impact upon consumers. Defendant NSPE's ban on competitive bidding, like the minimum fee schedule, is not an advisory measure. It is an absolute prohibition on price competition among defendant's members and requires immediate withdrawal should a client insist upon fee proposals or open bidding. *See id.* at 1195 n. 1 (text of Section 11(c) of NSPE Code of Ethics). The ban clearly impedes the ordinary give and take of the market place and operates "on its face [as] a tampering with the price structure of engineering fees." *Id.* at 1200.

Enforcement of Section 11(c) of the NSPE Code is actively promoted through publications, personal letters, case opinions by defendant's Board of Ethical Review, and state society investigations into alleged misconduct. Conformity with the provision apparently has been achieved as the record reveals no significant resistance by NSPE members to the bidding ban. *Id.* at 1196; *see generally id.* at 1205–08, FFP 27–43. Since engineering services are indispensable to almost any construction project and since alternative sources (e. g., non-licensed professional engineers) are non-existent, the impact upon the public of defendant's pricing restraint is plain. Without the ability to utilize and compare prices in selecting engineering services, the consumer is prevented from making an informed, intelligent choice. *See, e. g., id.* at 1210–11, FFP 56–61; *see also Goldfarb, supra,* 421 U.S. at 785, 95 S.Ct. 2004. The Court therefore finds that the combined character, enforcement, and effect of NSPE's bidding ban constitute a classic illustration of price fixing under *Goldfarb.*

 Price fixing is a *per se* violation of the Sherman Act, requiring no further inquiry by a court into the activities' origin, history, or purpose. *United States v. National Association of Real Estate Boards,* 339 U.S. 485, 489, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 218, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Trenton Potteries Co.,* 273 U.S. 392, 397–401, 47 S.Ct. 377, 71 L.Ed. 700 (1927). Defendant however claims to detect in the *Goldfarb* case, particularly Footnote 17, a directive that a profession's activities and code of ethics are to be judged not under the traditional *per se* doctrine but under the rule of reason.[3] Under the

---

3. Defendant also relies upon *United States v. National Ass'n of Securities Dealers (NASD),* 422 U.S. 694, 95 S.Ct. 2427, 45 L. Ed.2d 486 (1975); *Silver v. New York Stock Exchange,* 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963); and *White Motor Co. v. United States,* 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1967). However, the *Silver* and *NASD* cases involved the applicability of the Sherman Act to activities within specifically authorized statutory schemes, i. e., the Securities Exchange Act of 1934 and the Investment Company Act of 1940. In *White Motor Co.,* a case of first impression, the Supreme Court refused to adopt the *per se* rule for vertical territorial restrictions be-

· rule of reason, the legality of restraints upon trade is determined by weighing factors such as "[t]he history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, [and] the purpose or end sought to be attained . . . ." *Chicago Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918).

The Court rejects defendant's contention for a number of reasons. First, such a construction would substantially undermine the *Goldfarb* Court's denial of a total or partial exemption from antitrust regulation for professions. Neither the nature of an occupation nor any alleged public service aspect provides sanctuary from the Sherman Act. *Goldfarb, supra,* 421 U.S. at 787, 95 S.Ct. 2004. Second, *Goldfarb* does not rest upon a rule of reason analysis. The Court found price fixing activities and condemned them outright. Third, Footnote 17 apparently distinguishes between a profession's business aspects and its valid self-regulatory "restraints," such as membership requirements or standards of conduct. Price fixing, however, receives no privileged treatment when incorporated into a code of ethics. Fourth, the activities at issue here have a wide-ranging commercial impact and therefore are to be judged by normal antitrust standards applicable to business practices. Fifth, while NSPE claims that its ban on competitive bidding protects public safety and health, the Supreme Court in *Goldfarb* had before it and rejected similar arguments aimed at preventing "cheap but faulty work" by

professionals.[4] The age-old cry of ruinous competition, competitive evils, and even public benefit cannot justify price fixing. As Justice Douglas stated in *United States v. Socony-Vacuum Oil Co., supra,* "Any combination which tampers with price structures is engaged in an unlawful activity." 310 U.S. at 221, 60 S.Ct. at 843.

In view of the foregoing, the Court adheres to its previous decision holding Section 11(c) of defendant's Code of Ethics to be a *per se* violation of § 1 of the Sherman Act.

---

cause of the unknown impact of such arrangements. *See* 372 U.S. at 261–64, 83 S.Ct. 696.

Footnote 17 of the *Goldfarb* case states: "The fact that a restraint operates upon a profession as distinguished from a business is, of course, relevant in determining whether that particular restraint violates the Sherman Act. It would be unrealistic to view the practice of professions as interchangeable with other business activities, and automatically to apply to the professions antitrust concepts which originated in other areas. The public service aspect, and other

features of the professions, may require that a particular practice, which could properly be viewed as a violation of the Sherman Act in another context, be treated differently. We intimate no view on any other situation than the one with which we are confronted today." 421 U.S. at 787–88, 95 S.Ct. at 2013.

4. *See* Brief for Respondent Fairfax County Bar Ass'n at 34, *Goldfarb, supra;* 43 U.S.L. W. 3521-23 (1975) (*Goldfarb* argument before Supreme Court).