Arvinder SODHI, Plaintiff,

v.

**MERCEDES BENZ FINANCIAL SERVICES, USA, LLC,** Defendant.

**No. 13–CV–01004 ADS ARL.**

United States District Court, E.D. New York.

July 31, 2013.

Law Office of Alan J. Sasson, P.C., by Alan J. Sasson, Esq., of Counsel, Brooklyn, NY, for the Plaintiff.

M. Harvey Rephen & Associate, by Mark H. Rephen, Esq., of Counsel, New York, NY, for the Plaintiff.

Jones Hirsch Connors Miller & Bull, by Mark D. Wellman, Esq., of Counsel, New York, NY, for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On February 26, 2013, the Plaintiff Arvinder Sodhi (the "Plaintiff") brought this

action against the Defendant Mercedes Benz Financial Services, USA, LLC (the "Defendant") alleging that Mercedes Benz (1) violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"); (2) breached a Settlement Agreement executed by the parties; and (3) negligently reported the Plaintiff to certain credit bureaus. Presently pending before the Court are (1) the Plaintiff's motion to amend the complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 15(a)(2) and (2) the Defendant's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) on the basis of the Settlement Agreement.

For the following reasons, the Plaintiff's motion to amend is denied as futile and the Defendant's motion to dismiss the original complaint is granted.

## I. BACKGROUND

The Plaintiff, a resident of the State of New York, resides at 1776 Cedar Swamp Road in Glen Head, New York. The Defendant is a limited liability company incorporated in Michigan.

By agreement dated April 26, 2007, the Plaintiff entered into a motor vehicle lease agreement as a guarantor for the financing of his parents' lease of a 2007 Mercedes–Benz GL450 vehicle. The Defendant furnished the credit financing for the lease. At some point, the account on the lease allegedly went into default.

Thereafter, the Defendant's collection agent, American Coradius International, LLC ("AIC") took steps to collect the alleged guarantor debt owed by the Plaintiff. In August 2012, the Plaintiff allegedly threatened to commence a lawsuit against the Defendant for FDCPA violations. On September 14, 2012, the Plaintiff and the Defendant entered into a Settlement Agreement and Mutual Release Agreement (the "Settlement Agreement") regarding the alleged debt. As part of the

Settlement Agreement, the Defendant agreed to remit a settlement payment to the Plaintiff and to direct three major credit reporting agencies to remove the Defendant's tradeline on the Plaintiff's personal credit report. The Plaintiff, in turn, agreed to release and forever discharge the Defendant from:

> All known or unknown claims, counterclaims, cross-claims, charges, complaints, demands, damages, costs, expenses (including attorney fees and costs actually incurred), compensation or liabilities of any nature whatsoever, in law or in equity, arising from the acts and/or omissions that were asserted or could have been asserted in the proposed litigation and that relate to the subject matter of the proposed litigation.

(Settlement Agreement, at ¶ 2.) The Plaintiff further agreed "not to file any complaint, charge, paper, demand, dispute, report, allegation, claim or other grievance against [the Defendant] ... in any court, tribunal, government agency, administrative body or other enforcement entity relating to the Proposed Litigation of the [v]ehicle." (*Id.*)

The Plaintiff alleges that, in January 2013, the Defendant reported the alleged debt to Transunion, a credit bureau, "whereby materially breaching the contract with the Plaintiff and making the original settlement and release null and void and thereby voiding prohibition on the Plaintiff to sue under the FDCPA for the below state violation of the FDCPA by the Defendant." (Compl., at ¶ 13.)

As stated above, on February 26, 2013, the Plaintiff brought the instant action alleging (1) a violation of the FDCPA on the part of the Defendant; (2) breach of Settlement Agreement; and (3) negligence. The Plaintiff sought, among other things, actual damages, statutory damages, punitive damages, and attorney's fees.

On April 17, 2013, the Defendant moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the basis of the Settlement Agreement. The Plaintiff then moved to amend the complaint pursuant to Fed.R.Civ.P. 15(a)(2) to (1) remove all references to AIC; (2) remove the third cause of action for negligence; and (3) "clarify that the sole FDCPA violation at issue in this action is the Defendant's actions in re-reporting the trade line."

On May 31, 2013, the Plaintiff filed opposition papers to the Defendant's motion to dismiss. Local Rule 6.1(b) states: "On all civil motions, petitions, and applications, other than those described in Rule 6.1(a), and other than petitions for writs of habeas corpus, ... (2) any opposing affidavits and answering memoranda shall be served within fourteen days after service of the moving papers. Fed.R.Civ.P. 6 further provides that "[w]hen a party may or must act within a specified time after service ... 3 days are added after the period would otherwise expire under Rule 6(a)." Pursuant to these rules, the Plaintiff's opposition papers were due on May 6, 2013. However, as the Defendant notes, the Plaintiff filed his opposition papers on May 31, 2013, nearly one month late, without any explanation for the late filing.

However, "this Court has discretion to consider documents filed in violation of procedural rules." *Pagan v. Abbott Labs., Inc.,* 287 F.R.D. 139, 144 (E.D.N.Y.2012) (citation omitted); *Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C.,* No. 07 Civ. 0612, 2011 WL 4529605, at *1 n. 1, 2011 U.S. Dist. LEXIS 110955, at *6 n. 1 (E.D.N.Y. Sept. 27, 2011) (citation and internal quotation marks omitted). The Plaintiff's motion to amend addressed some of the Defendant's arguments raised in the motion to dismiss and the Defendant had and took the opportunity to reply to the Plaintiff's opposition papers, thereby minimizing any prejudice. Therefore, with regard to this situation only, the Court will consider the Plaintiff's opposition papers.

## II. DISCUSSION

### A. *The Motion to Amend*

 Under Fed.R.Civ.P. 15(a), leave to amend a complaint should be "freely given when justice so requires." *Id.* "However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir.2003); *Jones v. New York State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir. 1999) (holding that "a district court may properly deny leave when amendment would be futile."). A proposed amendment would be futile when it would not survive a 12(b)(6) motion to dismiss. See *Hunter v. Deutsche Lufthansa AG,* 863 F.Supp.2d 190, 202 (E.D.N.Y.2012). Here, the Court finds that the Plaintiff's proposed amendment would be futile because, while the Settlement Agreement may not expressly bar the FDCPA and breach of contract claims, those claims nonetheless fail as a matter of law.

### B. *The Motion to Dismiss*

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 572 F.3d 66 (2d Cir.2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to

legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.R.Civ.P. 12(b)(6). *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Relevant here, "[a] settlement agreement is a contract that is interpreted according to general principles of contract law. Once entered into, the contract is binding and conclusive." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir.2007). When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect. *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir.1994).

### 1. As to the Plaintiff's FDCPA Cause of Action

The Defendant first contends that the Plaintiff's FDCPA claim is barred by the terms of the Settlement Agreement. As stated above, the Plaintiff relinquished the right to bring any litigation "relating to the Proposed Litigation or the Vehicle." This language plainly bars FDCPA claims in connection with the subject vehicle that accrued prior to the execution of the Settlement Agreement. However, it is not clear that the Settlement Agreement forecloses suit on FDCPA claims that accrued after the Settlement Agreement was executed. In other words, the Settlement Agreement did not necessarily grant the Defendant an unfettered license, going forward, to violate the FDCPA as to the Plaintiff.

Regardless, the Court need not determine whether the Settlement Agreement bars the Plaintiff's FDCPA claim because, as the Defendant asserts, the Defendant does not qualify as a "debt collector" within the meaning of that statute. The purpose of the FDCPA is, in part, "to eliminate abusive debt collection practices by *debt collectors*." 15 U.S.C. § 1692(e) (emphasis added). The FDCPA defines a "debt collector" as:

[A]ny person ... in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another ...

15 U.S.C. § 1692a(6).

A plain reading of the statute reveals that generally, as a matter of law, "creditors are not subject to the FDCPA." *Maguire v. Citicorp Retail Servs., Inc.*,

147 F.3d 232, 235 (2d Cir.1998). The Court notes that as an exception to this general rule, "a creditor may be deemed a debt collector under the false name exception [of the FDCPA] if, in the process of collecting his own debts, [the creditor] uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts, if it pretends to be someone else or uses a pseudonym or alias, or if it owns and controls the debt collector rendering it the creditor's alter ego." *Mazzei v. Money Store,* 349 F.Supp.2d 651, 659 (S.D.N.Y. 2004) (citing *Maguire,* 147 F.3d at 234–35).

■■■ "In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the least sophisticated consumer." *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir.2008) (internal quotation marks omitted). The "least sophisticated consumer" standard is " 'an objective standard, measured by how the "least sophisticated consumer" would interpret the notice received from the debt collector.' " *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir.2001) (quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996)). The purpose of applying the "least sophisticated consumer" standard to review claims of FDCPA violations is to: "(1) ensure the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.2002) (internal quotation marks and alterations omitted). "Ultimately, the critical question [in determining whether a communication violates the FDCPA] is ... whether the notice fails to convey the required information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to the meaning of the message." *Weiss v. Zwicker,* 664 F.Supp.2d 214, 216 (E.D.N.Y.2009) (citations and internal quotation marks omitted).

■■■ Here, the Plaintiff maintains that the Defendant used a name other than its own—ACI—which might lead a debtor to believe that a third party has become involved in collecting the alleged debt. In support of that assertion, the Plaintiff points to two letters dated April 17, 2012, one from ACI stating that the Plaintiff's account with the Defendant had been placed with ACI's office for collections and the other from the Defendant regarding the same debt and signed "Sincerely, ACI." However, even if these representations sufficed to establish that the Defendant disguised its name to collect the alleged debt, such representations would only relate to the FDCPA claims that accrued prior to the execution of the Settlement Agreement, and would by barred by that agreement. Stated another way, at most, the Plaintiff can establish that the Defendant acted as a "debt collector" under the FDCPA for purposes of the claims that accrued prior to the execution of the Settlement Agreement. In the Court's view, the Plaintiff fails to adequately allege that the Defendant acted as a "debt collector" for purposes of the FDCPA as to any claims that accrued after the Settlement Agreement was executed. Accordingly, the Court grants the Defendant's motion to dismiss the Count I FDCPA claim for failure to state a cause of action. However, because the Plaintiff did set forth allegations that could indicate that at one time the Defendant worked in concert with a third party collection agency, the Court grants the Plaintiff leave to replead its FDCPA cause of action with facts related to the time period after the execution of the Settlement Agreement.

2. *As to the Breach of the Settlement Agreement Cause of Action*

■■ The Plaintiff also alleges that the Defendant breached the Settlement Agreement by re-reporting the Plaintiff to the credit reporting agencies after the Settlement Agreement was executed. The Settlement Agreement required the Defendant to "verify to [the Plaintiff] in writing that [the Defendant's] submitted a reporting transmission to Equifax Information Services, LLC, Trans Union, LLC and Experian Information Solution, Inc., directing each of them to remove the [Defendant] tradeline relating to [the Plaintiff's] personal account." (Settlement Agreement, at ¶ 1.) The Plaintiff does not dispute that the Defendant complied with this obligation. In addition, the Plaintiff fails to supply any factual allegations to support its assertion that the Defendant re-reported the Plaintiff to the credit reporting agencies in violation of the Settlement Agreement.

The fact that the Defendant's tradeline appeared on the Plaintiff's Trans Union, LLC credit report after the parties entered into the Settlement Agreement does not directly speak to any wrongful conduct on the part of the Defendant. This notation could have appeared on the credit report in error, or could have preceded the Defendant's directive to the reporting agencies. In this regard, the Plaintiff points to no provision of the Settlement Agreement whereby the Defendant *guaranteed* that the Defendant's tradeline would not appear on one of the Plaintiff's credit reports after the execution of the Settlement Agreement. *Doherty v. Citibank*, 375 F.Supp.2d 158, 162 (E.D.N.Y. 2005) ("a creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect a debt.") (citation and quotation marks omitted). In fact, the Defendant agreed to direct the credit report agencies to remove the Defendant's tradeline from the Plaintiff's credit reports. For these reasons, the Court grants the Defendant's motion to dismiss the breach of the Count II Settlement Agreement cause of action. Again, however, because the notation did appear on the Plaintiff's credit report after the Defendant directed the credit agency not to post the Plaintiff's name, the Court grants the Plaintiff leave to replead additional factual allegations that speak directly to the conduct of the Defendant.

### III. CONCLUSION

It is hereby

**ORDERED,** that the Plaintiff's motion to amend the complaint is denied as futile; and it is further

**ORDERED,** that the Defendant's motion to dismiss the complaint is granted and the complaint is dismissed without prejudice. Should plaintiff wish to replead his claims against the Defendant, the Plaintiff is afforded until August 30, 2013 to amend his complaint. Failure amend the complaint within the time period set forth will result in dismissal of the case with prejudice. ·

**SO ORDERED.**